AFD FUND, Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 02–558C.

United States Court of Federal Claims.

Aug. 17, 2004.

James A. Ellis, Jr., Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, TX, for plaintiff. With him on the briefs was Mathew W. Grynwald.

Christian J. Moran, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch. W. Barry Huggins, Associate General Counsel, Army & Air Force Exchange Service, Dallas, TX, was of counsel.

## OPINION AND ORDER

LETTOW, Judge.

This contract case is before the court on plaintiff's motions for summary judgment or partial summary judgment pursuant to Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC") or for final judgment on some claims pursuant to RCFC 54(b), along with defendant's cross-motion for partial summary judgment. Plaintiff, AFD Fund ("AFD Fund" or "AFD"), is the post-bankruptcy estate of AmeriServe Food Distribution, Inc., and its debtor affiliates (collectively, "AmeriServe"). AFD seeks payment for food and restaurant supplies provided by AmeriServe to the Army & Air Force Exchange Service ("AAFES") under a contractual arrangement. Thousands of individual orders for food and supplies were placed, and roughly 1500 of these orders are involved in this case. AFD claims that it is owed a net amount totaling $980,131.86. AFD's motion turns in part on the ability of a party moving for summary judgment to rely on summaries of voluminous records as

evidence to support a claim for payments due and owing. The parties have fully briefed their positions, and a hearing was held on May 28, 2004. For the reasons set out below, AFD's motion for final judgment under Rule 54(b) on some claims is denied without prejudice, its motions for summary judgment and partial summary judgment are denied, and the government's cross-motion for summary judgment is granted in part and denied in part.

## BACKGROUND

AmeriServe was a corporation headquartered in Addison, Texas, that sold and delivered food and restaurant supplies to several chains of restaurants, including Burger King restaurants operated by AAFES throughout the country. Compl. ¶¶ 1, 4; Pl.'s App. Tab 1 ¶ 5 (Aff. of Diana Moog (Aug. 29, 2003)). On November 28, 2000, the United States Bankruptcy Court for the District of Delaware approved a joint liquidating plan of reorganization filed by AmeriServe and its debtors. Pl.'s App. Tab 1 ¶ 4. AFD Fund avers that under that plan, it is the post-confirmation estate of AmeriServe and owner of all claims held by AmeriServe as of January 31, 2000. *Id.*

On October 23, 2001, AFD submitted a claim pursuant to Section 6 of the Contract Disputes Act, as amended, 41 U.S.C. § 605, against AAFES for $1,074,312.89, representing the amount allegedly owed for food and restaurant supplies provided by AFD to AAFES for which the latter had failed fully to pay. *Id.*, Tab 3, Ex. A (Aff. of James A. Ellis, Jr. (Aug. 29, 2003)). On December 27, 2001, the contracting officer issued a partial decision that $94,131.46 was payable on the invoices she had reviewed as of that date. *Id.*, Tab 4, Ex. B at 299 (Aff. of Michael A. Satz (Oct. 7, 2003)). With her partial decision, the contracting officer included a listing

of each of the individual invoices she had found to be due and owing, along with the associated purchase-order numbers. *Id.* at 301–02. AFD received payment of the accepted amount from AAFES. Pl.'s Mot. for Summ. J. ¶ 26. Thereafter, on February 4, 2002, the contracting officer issued a decision that $482,049.12 was additionally owed to AFD. Pl.'s App. Tab 4, Ex. D at 304.[1] However, in this decision by the contracting officer, she also determined that some claimed amounts due lacked documentation and thus could not be accepted for payment at that time:

> The amount of $9,260.51 represents that portion of your claim for which ADF [*sic*] has provided no supporting documentation for requested freight; $74,925.70 we have received no invoices; and $3,674.39 is a duplicate invoice. The amount of $14,559.81, paid on check number 1101241332, dated 26 December 01 was not included in the invoices you provided, and therefore deducted from the total; and $108,565.87 was previously reported by your company as unapplied cash.

*Id.* The contracting officer concluded by stating that AAFES was "prepared to release the remainder of payment upon execution of a settlement agreement between [AAFES] and AFD." *Id.* Finally, by letter dated May 21, 2002, the contracting officer informed AFD that she "did not intend [her] 4 February 2002 letter to be a final decision, as there were, and still are, some aspects of AFD's claim that are unclear to us." Compl. Ex. F. She acknowledged receipt of additional information submitted to the contracting officer by a letter from AFD's counsel dated May 8, 2002, and requested further information respecting the remaining categories of invoices she described as lacking documentation. *Id.* A week later, on May 29, 2002,

---

1. On December 21, 2001, the contracting officer had informed AFD that she would issue a final decision by January 31, 2002. Pl.'s App. Tab 4, Ex. A at 298. Her initial decision dated December 27, 2001, reaffirmed that due date. *Id.*, Ex. B at 299. On the due date, however, the contracting officer sent AFD a letter stating that she was "currently finishing a final draft that should be in the mail to you no later than close of

business Monday 4 February 2002." *Id.*, Ex. C at 303. AFD could have treated the passage of January 31, 2002, without a final decision as a deemed denial, such that it was entitled to file its complaint in this court as of that date. *See* 41 U.S.C. § 605(c)(5); *United Partition Sys., Inc. v. United States*, 59 Fed.Cl. 627, 634–35 (2004); *Claude E. Atkins Enters. v. United States*, 27 Fed. Cl. 142, 145 (1992).

AFD filed its complaint in this Court.[2]

## STANDARD FOR DECISION

Entry of a summary judgment is appropriate if the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" dispute is one that "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505. A "material" fact is one that would affect the outcome of a case. *Id.* at 248, 106 S.Ct. 2505. In considering whether a genuine issue of material fact exists, courts must resolve all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When entertaining cross-motions for summary judgment, courts evaluate each motion on its own merits and resolve any reasonable inferences against the party whose motion is being considered. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed.Cir.1987). Both motions must be denied if genuine disputes exist over material facts. *Id.*

## ANALYSIS

### A. *Nature of AFD's Claim*

AFD pled its case as a claim on an account and moved for summary judgment on the net amount owed. *See, e.g.,* Hr'g Tr. at 64 (May 28, 2004) ("This is one claim for the debt that's owed."). By contrast, the government maintains that the basis of plaintiff's claim is not one account but rather a set of approximately 1,500 individual invoices and that "[o]nly a sequential proof allows the United States a fair opportunity to investigate and to challenge, if necessary, AFD Fund's Claim." Def.'s Reply at 5. Perhaps to prove its point, in responding to AFD's motion, the government admirably performed the pains-

taking task of analyzing AFD's claim on an invoice-by-invoice basis and providing supporting payment documentation and copies of invoices themselves. A claim on an account in some jurisdictions might at an earlier time have been described as an "action on a book debt," a cause of action used in the nineteenth century. *See Swift & Co. v. Rexton, Inc.*, 187 Conn. 540, 447 A.2d 9, 11 n. 2 (1982) (citing *Terrill v. Beecher*, 9 Conn. 344 (1832)). As *Swift* notes, however, disputes over transactions in goods are now governed by the Uniform Commercial Code or an analog. *Swift*, 447 A.2d at 11 n. 2 (citing *Kunian v. Development Corp. of Am.*, 165 Conn. 300, 334 A.2d 427, 431 (1973)).

In these circumstances, the court accepts the government's position that this case must proceed on an invoice-by-invoice basis. Tedious though it may be, it simply is not possible to bypass the salient fact that AFD's claim turns on discrete invoices relating to particular orders, not to a unitary account. It is axiomatic that a claimant must establish by admissible evidence that it is entitled to judgment as a matter of law, regardless of whether that showing is made on motion for summary judgment or after trial on the merits. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Broomall Indus., Inc. v. Data Design Logic Sys., Inc.*, 786 F.2d 401, 405 (Fed.Cir. 1986). In this respect, requiring AFD to prove each invoice is consistent with Fed. R.Evid. 1006, permitting the introduction of summaries into evidence when the underlying voluminous data and information are admissible and have been made previously available to the opposing party. *See Bannum, Inc. v. United States*, 59 Fed.Cl. 241, 243–45 (2003).

### B. *AFD's Request For Final Judgment On Some Claims Under RCFC 54(b)*

■ Preliminarily, the government concedes that it owes $572,346.51, but it opposes entry of a final judgment in AFD's favor for that amount pursuant to RCFC 54(b).[3]

---

**2.** This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1491(a)(1) and 41 U.S.C. §§ 605, 609.

**3.** Rule 54(b) states, in pertinent part:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, or third-party claim, or when multiple parties are involved, the court may direct

Def.'s Supp. Stmt. at 5. Defendant contends that "AFD Fund should be required to prepare and to present the list of invoices comprising the $572,346.51" so as to allow the government "a reasonable opportunity to review, and, if necessary, to object to, AFD Fund's proposal." *Id.* at 5–6. In response, AFD submitted a "comprehensive spreadsheet" seeking to implement AAFES's concessions. Pl.'s Supp. Stmt. at 4. The spreadsheet sets out the identifying number for each invoice involved in the case, and, for each such invoice, it provides a date for the invoice, the total amount of the invoice, the vendor's open amount, AAFES's open amount, a recitation of remarks, AFD's understanding of AAFES's admitted amount or short-pay amount, the contested amount, and AFD's understanding of AAFES's basis for contesting certain amounts. *Id.* at Attach. Taken with the government's earlier efforts to work through the case on an invoice-by-invoice basis, this spreadsheet seemingly provides a roadmap to resolution of the amounts due on more than half of the invoices involved in the case, albeit by stipulation without resort to formal proofs of admissible evidence. In the circumstances, the court orders that the government shall respond to AFD's proffer within thirty days of this opinion and order, advising the court whether there is agreement on the identity of invoices respecting which there is no contest as to the amount due, as well as the total amount reflected on such invoices. The court will then consider whether to enter final judgment on the agreed claims, *i.e.*, the invoices and amounts so identified, pursuant to

RCFC 54(b). Given the state of the evidence at this juncture in the case, the court will in no event enter final judgment under RCFC 54(b) absent a consensus on the particular invoices that would be addressed by such a judgment.

### C. *AFD's Evidence In Support Of Summary Judgment*

■ In support of its motion for summary judgment, or, in the alternative, partial summary judgment, AFD relies on two documents, a Statement of Account and an Account Reconciliation. AFD explains that "the Account Reconciliation is a record of all of the transactions, includ[ing] those termed as 'closed[,]' *i.e.*, those charges for which payment was received and applied, [while] the Statement of Account is a printout of the records showing only those transactions that remain 'open' as well as credits that have been applied to reduce the amount owed." Pl.'s Resp. to Def.'s Mot. to Strike at 5. The government filed a motion to strike both documents as evidence, observing that a party moving for summary judgment must rely on admissible evidence and arguing that AFD fails to satisfy the requirements of either Rule 803(6)[4] or Rule 1006[5] of the Federal Rules of Evidence. The motion to strike is denied for the reasons that follow.

Both the Statement of Account and the Account Reconciliation are drawn from AFD's electronic records, preserved from AmeriServe. AFD states that the Statement of Account is "a *shorthand expression* of the end result of all of the transactions depicted

---

the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

**4.** The Rule excepts from the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification with

Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. Fed.R.Evid. 803(6).

**5.** The Rule provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.
Fed.R.Evid. 1006.

in the Account Reconciliation." Pl.'s Resp. to Def.'s Mot. to Strike at 5 (emphasis added). However, the Account Reconciliation apparently does not contain all of the information that was reflected on each underlying invoice. It appears from the supplemental affidavit of Diana Moog, the Chief Financial Officer of AmeriServe, that AmeriServe had at least two different electronic databases that were managed with computer software programs—one to generate invoices, and the other to record transactions upon and after delivery. Pl.'s Reply, Attach. (Supp. Aff. of Diana Moog (Mar. 29, 2004)). With respect to generating invoices, she explains that "[o]nce an order was filled and the goods loaded onto a truck for shipment an invoice was printed from the electronic records, setting out the goods that had been loaded for delivery and requesting payment of the amounts charged." *Id.* at ¶ 5. She further testified at her deposition that "[a]t the time that [an] invoice was generated to the shipping department, it was posted into the accounts receivable system. So the invoice was generated based on what was loaded on the truck, and that kind of completed the first part to get an invoice generated." Def.'s App. at 3224 (Diana Moog Dep. Tr. (June 4, 2003)). Any errors, changes, damages, or shortfalls in delivery communicated by AAFES were recorded by AmeriServe "in the financial data base of AmeriServe." Pl.'s Reply, Attach. ¶ 6. It was that electronic database that was used to print the Statement of Account and the Account Reconciliation. *Id.* ¶ 8. However, as Ms. Moog used the terms, it is not readily apparent that the "accounts receivable system" equates to the "financial database."

In all events, some information contained in the electronic records used to generate invoices is not reflected in the Account Reconciliation. The data set out in the AR Invoice History section of the Account Reconciliation include the store number, store name (AAFES), invoice number, invoice date, amount, and payment information. *See* Pl.'s App. Vols. 4 and 5. Yet the invoices

contain additional information, including the product purchased, its unit and total price, eligibility for a discount, and due date for payment. Def.'s App. at 3228–29. In short, the Account Reconciliation does not reflect all of the information pertinent to tracking an invoice; nonetheless, it encompasses a substantial portion of the electronic records comprising the transaction process between AmeriServe and AAFES.[6]

Although the Statement of Account and the Account Reconciliation are not complete in terms of reflecting all of the data in AFD's electronic records, Ms. Moog's affidavits provide a foundation for admitting the Statement of Account and the Account Reconciliation into evidence as business records under Fed.R.Evid. 803(6). As the former Chief Financial Officer of AmeriServe, Ms. Moog testified that she is a custodian of the records now held by AFD. Pl.'s App. Tab 1 ¶ 3; Pl.'s Reply, Attach. ¶ 3. She paraphrased the requirements of Rule 803(6) by affirming that the electronic records were regularly made at or near the time of the respective transactions by a person with knowledge of same, and that those records were stored in the course of AmeriServe's regularly conducted business activity. Pl.'s App. Tab 1 ¶¶ 6–8; Pl.'s Reply, Attach. ¶¶ 4–7. Further, "[t]he computer software operating the database is capable of printing directly from those records" an analysis of all transactions (the Account Reconciliation) as well as a report limited to the open transactions (the Statement of Account). Pl.'s Reply ¶ 8. Ms. Moog testified that both the Statement of Account and the Account Reconciliation exactly duplicate the relevant entries in the underlying electronic records. Pl.'s App. Tab 1 ¶ 6 (Statement of Account); Pl.'s Reply, Attach. ¶ 9 (Account Reconciliation). Thus, although the two documents were printed subsequent to the filing of AFD's complaint, this circumstance alone does not indicate untrustworthiness. In sum, the Statement of Account and Account Reconciliation are admissible as evi-

---

6. Respecting the Account Reconciliation, Ms. Moog testified that it is "a duplicate of the entire database of electronic records for the AAFES account." Pl.'s Reply, Attach. ¶ 9. However, there is no explanation of where electronically the additional information is stored that is used to generate the invoices.

dence, and that evidence does tend to support AFD's claims.

■ Nonetheless, that documentary evidence is not sufficient to establish all of the elements of AFD's claim for breach of contract such that judgment can be granted. Because the Federal Acquisition Regulations do not govern the contractual terms between AFD Fund and AAFES, *see* Def's. Reply at 4, the provisions of the Uniform Commercial Code are pertinent as a guide to the legal framework for the case. *See Franklin Pavkov Const. Co. v. Roche*, 279 F.3d 989, 996 n. 3 (Fed.Cir.2002) ("[W]e have relied on the Uniform Commercial Code ('U.C.C.') in cases such as this ... [to] inform the analysis of issues raised in government contracts."). As the government observes, AFD, as a seller of goods, bears the burden of showing that it made a proper tender of delivery, which is a condition to a buyer's duties of acceptance and payment. U.C.C. § 2–507(1); *see, e.g., Merchants Acceptance, Inc. v. Jamison*, 752 So.2d 422, 425 (Miss.Ct. App.1999) (applying the UCC provision as it exists in the Mississippi Code); *see generally* 3A Lary Lawrence, *Anderson on the Uniform Commercial Code* § 2–507:7–8 (3d ed.2002). *Cf. Morgan Buildings and Spas, Inc. v. Dean's Stoves and Spas, Inc.*, 58 Conn.App. 560, 753 A.2d 957, 960 (2000) ("As prerequisites to recovery ... a seller must establish acceptance by the buyer of goods sold and delivered, as well as the failure of the buyer to fulfill his payment obligation." (quoting *Swift*, 447 A.2d at 11)). Moreover, AFD must match the product delivered with the product ordered, and it cannot conclusively resolve any pricing disputes without proof of the price of a product in question. As noted *supra*, at 545, the evidence proffered by AFD lacks these critical elements.

The gap in evidence due to these omissions is not filled by the Statement of Account and Account Reconciliation because the State-

ment and the Reconciliation do not satisfy the requirements of Fed.R.Evid. 1006. A proponent of a summary of evidence must properly authenticate it by satisfying four requirements:

> First, the summarized writings must be so voluminous so as to be unable to be conveniently examined in court. Second, the underlying evidence must itself be admissible. Third, the original or copies of the summarized writings must be made available to the opposing party. And, fourth, the proposed summary (or chart or calculation) must accurately summarize (or reflect) the underlying document(s) and only the underlying document(s).

*Bannum, Inc.*, 59 Fed.Cl. at 244–45 (quoting *Bath Iron Works Corp. v. United States*, 34 Fed.Cl. 218, 232–33 (1995), *aff'd*, 98 F.3d 1357 (Fed.Cir.1996)). Because AFD denies that either the Statement of Account or the Account Reconciliation is a summary, Pl.'s Resp. to Def.'s Mot. to Strike at 3–6, it has not explicitly attempted to establish any of these requirements. Most importantly, AFD did not provide its complete set of electronic files to the government, including copies of the electronic records used to generate invoices.[7]

Accordingly, on the record before the court, AFD's proffered evidence, although admissible, is not sufficient to establish all the elements of AFD's case for purposes of a summary judgment under Rule 56(c). At this juncture, the only way AFD can support a final judgment on some claims is to reach an agreement with the government with respect to some or all of those claims. As indicated earlier, if such a consensus is reached respecting invoices, the court may enter final judgment on the agreed invoices.

### D. *Specific Issues Regarding Invoices*

In its cross-motion, the government seeks partial summary judgment with respect to

---

7. AFD appears to be capable of making available to the government all of the information pertinent to invoices. As Ms. Moog commented,

> [o]n several occasions, after AFD Fund was created to own and prosecute claims formerly owned by AmeriServe, additional copies of invoices that had been delivered by AmeriServe

were requested from AFD Fund. In [*sic*] such occasions, AFD Fund caused to be printed additional copies of those invoices, using the electronic data in the business records that had been used to print ... the original invoices. Pl.'s Reply, Attach. ¶ 16.

five categories of invoices. It has carried its burden for only one invoice.

Invoice 343166, representing an amount of $9.42, is dated June 16, 1995. AFD's complaint, filed May 29, 2002, is more than six years subsequent to that invoice. A claim on that invoice is thus barred by the applicable statute of limitations. *See* 28 U.S.C. § 2501.

■ Genuine issues of material fact exist regarding the other four categories of claims. First, the government avers that it did not receive invoice 9912, which concerns a finance charge. Def.'s Opp'n at 12; Def.'s Reply at 5–6. The government relies on the affidavit of an Accounts Payable clerk for AAFES, who states that her search of AAFES's electronic record system indicated that AAFES did not receive that invoice. Def.'s App. at 3070 (Aff. of Glenda Valladares (Jan. 8, 2004)). Drawing all inferences in the light most favorable to AFD, the non-movant relative to the government's cross-motion, the Court finds that the government's evidence is not sufficient to dispel other equally plausible inferences for why the invoice does not appear in AAFES's records, including the possibility that AAFES employees never entered it into the database because it did not fit within a product category.

Respecting a set of issues about invoices that include freight charges and invoices that lack proper purchase order numbers, the government has cited no evidence that contractual provisions relating to those categories of claims are conditions precedent to the buyer's duty of payment. Thus, the government is not entitled to judgment as a matter of law that it is relieved from paying claims on those invoices.

Finally, the government seeks summary judgment that it is not obligated to pay certain invoices that it admits AAFES "short-paid due to a pricing dispute." Def.'s Reply at 8. The government avers that it was entitled to pay a lower price for some invoices listing a higher invoice price than the price listed on the respective purchase order. Def.'s Opp'n at 16. Defendant, however, has

proffered no evidence pertinent to this issue, apparently because no such evidence exists. As the contracting officer for AAFES testified, "AAFES does not keep records of pricing lists, as these entries are usually stored electronically and deleted permanently once new prices are entered." Def.'s App. 3061 (Aff. of Frances Sanders (Jan. 8, 2004)). In short, the government has failed to demonstrate the absence of a genuine dispute of material fact respecting its pricing dispute with AFD.

### CONCLUSION

For the reasons stated, (1) the government's motion to strike AFD's proffer of the Statement of Account and the Account Reconciliation as evidence in support of AFD's motions is denied, (2) correlatively, AFD's motion to strike the government's documentary submissions in support of the government's cross-motion for summary judgment is denied, (3) AFD's motion to strike the government's cross-motion for summary judgment is denied, (4) AFD's motion for summary judgment or partial summary judgment is denied, (5) the government's cross-motion for partial summary judgment is granted insofar as invoice 343166 is concerned but is otherwise denied, and (6) AFD's motion for final judgment on some claims is denied without prejudice. Within thirty days of this opinion and order, the government shall respond to AFD's invoice-by-invoice proffer set out in the spreadsheet appended to AFD's Supplemental Statement, such that the court may then consider entering final judgment on those "claims," *i.e.*, invoices, respecting which there is agreement both as to liability and amount of damages.

IT IS SO ORDERED.