PR CONTRACTORS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 03–30C.

United States Court of Federal Claims.

Jan. 20, 2006.

ORDER AND MEMORANDUM OPIN-
ION DENYING DEFENDANT'S
MOTION IN LIMINE

WILLIAMS, Judge.

Plaintiff PR Contractors, Inc. (PR) seeks an equitable adjustment of its contract for the enlargement of the Wax Lake levee in St. Mary County, Louisiana, to compensate it for increased labor, trucking and fill costs. Pending before the Court is Defendant's motion *in limine* seeking to exclude three exhibits and the testimony of Lin B. Heath, a consultant who prepared the claim. The challenged exhibits are the claim which underlies this action, as well as two memoranda recommending settlement of the claim prepared by Domingo Elguezabal, a former government employee. Because the challenged exhibits and testimony are best evaluated in the context of a trial after Plaintiff has attempted to lay a foundation for their admissibility, the motion *in limine* is denied.

### *Discussion*

■ A motion *in limine* is a preliminary motion that serves a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly would be inadmissible for any purpose. *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *see also Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).[1] Because of the preliminary nature of such motions, "[r]ulings on motions in limine ... are subject to change as the case unfolds." *Ultra–Precision Mfg. v. Ford Motor Co.*, 338 F.3d 1353, 1359 (Fed.Cir.2003). Thus, while ["t]he prudent use of the *in limine* motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered .... [s]ome evidentiary submissions [ ] cannot be evaluated accurately or sufficiently by the trial judge in such a

Winston Gerard DeCuir, Sr., DeCuir & Clark, L.L.P., Baton Rouge, LA, for plaintiff.

Sharon Ann Snyder, U.S. Department of Justice, Washington, DC, for defendant.

---

1. *In limine* is, by definition, "[o]n ,or at the threshold; at the very beginning; preliminarily." *Luce v. United States*, 469 U.S. 38, 40 n. 2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)(internal cita-

tion omitted); *see also United States v. Van Putten*, 2005 WL 612723, 2005 U.S. Dist. LEXIS 4009 (S.D.N.Y. Mar. 15, 2005).

procedural environment." *Jonasson,* 115 F.3d at 440.

### Exhibit 4, Claim for Equitable Adjustment dated April 16, 2001 drafted by Lin B. Heath

This exhibit consists of a cover letter signed by Plaintiff's president, Cedric Patin, seeking an equitable adjustment from the U.S. Army Corps of Engineers (COE) in the amount of $865,156. The letter contains a certification that the claim is accurate and made in good faith. Appended to this letter is a 57–page "Statement of Claim" which includes a discussion of the five components of the claim and data. The claim summary outlines the five elements of the claims as follows:

| | | |
|---|---|---|
| I. | Labor Wage Rate Variances: | $145,172 |
| II. | Increased Trucking Costs: | $168,074 |
| III. | Material Shrinkage Factor: | $394,344 |
| IV. | Final Quantity Under-run: | $ 43,660 |
| V. | Additional Fill Due to Settlement: | $113,906 |
| | TOTAL AMOUNT OF CLAIM: | $865,156 |

Defendant's Appendix (DA) 11.

### Labor Costs

Plaintiff's claim for increased labor costs stems from its inability to fulfill its labor needs at the Davis–Bacon rates and the COE's alleged assurances that it would adjust the contract to make up the difference. The claim contains a one-page "Labor Wage Rate Variance Summary," which lists the rates paid by Plaintiff for various job categories, the Davis Bacon rates and the variance. DA 16. The claim also contains a 16–page chart entitled "Labor Wage Rate Analysis Detail" purporting to list individual employees of PR and their pay for specified weeks. DA 17–32. Finally, the claim contains "General Decision Number LA 960049," Mar. 15, 1996, listing wage rates in specified counties in Louisiana (including St. Mary) for job categories in River, Harbor and Flood Control Projects. DA 33–35.

### Trucking Costs

The increased trucking costs represent costs over and above the $30 per hour trucking costs in Plaintiff's proposal. Plaintiff claims that the COE assured it that if PR could not fulfill its trucking requirements at this rate, it would adjust the contract to cover the variance. PR's actual trucking cost per hour was $40. DA 12–13. The claim includes a one-page summary of PR's actual truck rate per hour versus its claimed estimated truck rate per hour and the adjusted "truck unit cost" based upon the quantities of uncompacted and semi-compacted soil hauled. DA 36. This is followed by a one-page "Subcontract Trucking Summary" which lists truck sources, number of trucks, hours and payments, and a page entitled "Diamond C & Subs" listing the same type of information. DA 37–38. The claim also includes a "Payment Application Summary" for Diamond C, a letter agreement that Melgrave, Inc. (Melgrave) would supply trucks to PR at $40 per hour and four copies of checks issued by Melgrave. DA 39–45.

### Shrinkage of Fill Material

PR claims that it is entitled to payment for the full quantity of fill it hauled, not the shrunken fill quantity "in place." DA 14. The claim contained a "material shrinkage" chart listing the difference in paid quantities and hauled quantities of fill. DA 45.

### Final Quantity Under-run

Because the final approved and paid quantities for fill were less than 85 percent of the original estimated quantities, Plaintiff contends that the contract's "Variation in Estimated Quantity" provision entitles it to compensation for this under-run. DA 14–15. The claim contains a chart listing the final surveyed quantity versus the contract quantity for uncompacted and semi-compacted fill followed by a "Fill Cost Detail."[2] DA 46–50.

### Additional Fee Due to Settlement

Plaintiff claims that it had to provide additional fill because settlement plates installed in the levee prior to the fill activity could not be located. Adjustments were made for the recovered plates, and Plaintiff seeks a similar adjustment for the lost plates. DA 15. The claim contains a chart showing the number of plates lost and recovered as well as the "av-

---

**2.** The Claim appended to Defendant's Motion *in limine* contains two copies of this same chart.

DA 46 and 48.

erage subsidence volume," fill quantity and unit prices followed by a six-page chart entitled "Settlement Computations." DA 52–58.

### The Wholesale Exclusion of Exhibit 4 and Mr. Heath's Testimony Is Not Warranted at this Juncture

■ Defendant seeks to exclude Exhibit 4 on the grounds that the claim "is hearsay, contains expert opinions, purports to be an analysis of PR's damages and is not based upon first hand knowledge." Def.'s Motion *in Limine* at 2–3 (Def.'s Mot.). In support of this, Defendant argues that Mr. Heath, the consultant who prepared the claim, relied principally upon PR's owner, Mr. Patin, for the information in this exhibit. Defendant argues that Mr. Heath's trial testimony would be unreliable because at his deposition he had no backup documents, could not remember details about the exhibit, and admitted that the claim contained his own opinion. Defendant further submits that any testimony that may be proffered by Mr. Heath in support of Exhibit 4 will exceed the scope of proper lay opinion testimony and lack first-hand knowledge. As such, the Government requests that the Court prohibit PR from presenting any testimony from Mr. Heath and from introducing Exhibit 4 at trial.

This is an action under the Contract Disputes Act (CDA) challenging a final decision of a contracting officer (CO). A final decision is a jurisdictional prerequisite to this action. *See* 41 U.S.C. § 605(a); *see also England v. The Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed.Cir.2004) (For the court to have jurisdiction under the CDA, "there

must be both a valid claim . . . and a contracting officer's final decision on that claim."). As such, the claim for equitable adjustment is properly part of the record as it is the claim upon which the CO rendered the decision at issue. *See generally* 41 U.S.C. § 609(a).[3] At a minimum, the claim is admissible to show it was duly submitted to the contracting officer and acted upon, as required for this Court to have a jurisdiction under the Contract Disputes Act. 41 U.S.C. § 605(a).

Defendant raises several valid points about the weight to be given the content of the claim and the purpose for which the claim may be used. The Court will not accept unsubstantiated speculation as fact simply because it is contained within the four corners of the claim. A claim is precisely that— a request for relief that requires factual support and backup for the demands therein. In sum, the Court does not exclude the claim at this juncture, but will not accept statements in the claim as fact without further substantiation in the form of credible testimony or reliable documentation.

■ The same is true of the proposed testimony of Mr. Heath. Plaintiff is entitled to explain the basis of its claim and its theories as set forth by Mr. Heath in the claim itself.[4] As the preparer of the claim, Mr. Heath is competent to testify as to how he went about preparing the claim. To the extent that Mr. Heath's testimony attempts to offer unsupported opinion, or lacks backup information and critical detail, those matters are best raised at trial when the Court can

---

3. In CDA proceedings before the Boards of Contract Appeals, the claim is routinely included in the record as part of the Rule 4 file. *See* General Services Administration Board of Contract Appeals (GSBCA) Rule 104(a)(3) ("[T]he contracting officer shall file . . . the written claim or claims... and evidence of their certification."); *see also* GSBCA Rule 104(f) ("All of the exhibits of the appeal file, except for those as to which an objection has been sustained, are part of the record upon which the Board will render its decision."); Armed Services Board of Contract Appeals (ASBCA) Rule 4(a)(e) ("Documents contained in the appeal file are considered, without further action by the parties, as part of the record upon which the Board will render its decision. However, a party may object, for reasons stated, to consideration of a particular document

or documents reasonably in advance of hearing or, if there is no hearing, of settling the record. If such objection is made the Board shall remove the document or documents from the appeal file and permit the party offering the document to move its admission as evidence.").

4. Mr. Heath will not be permitted to testify as an expert, as this Court has ruled that Plaintiff did not comply with Rule 26(a)(2). *See* Order dated January 26, 2005 (granting Defendant's Motion to Strike the "Statement of Claim" as Plaintiff's expert report) ("[Mr. Heath's] Statement of Claim is unsigned and does not comply with the expert report requirements set forth in Rule 26(a)(2) of the Rules of the Court of Federal Claims.").

rule on appropriate objections in context. Defendant has not proffered sufficient cause at this juncture for the Court to determine that Mr. Heath's testimony would be so unreliable or speculative as to be inadmissible in its entirety. As such, Plaintiff may put on Mr. Heath's testimony, and Defendant may object as necessary during the course of the trial.

■ Plaintiff further asserts that the claim is admissible as a summary under Federal Rule of Evidence (FED. R. EVID.) 1006. The Rule provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The Court may order that they be produced in court.

FED. R. EVID. 1006.

As the COFC recently recognized in *AFD Fund v. United States*, 61 Fed.Cl. 540, 546 (2004), a proponent of a summary of evidence must properly authenticate it by satisfying four requirements:

First, the summarized writings must be so voluminous so as to be unable to be conveniently examined in Court. Second, the underlying evidence must itself be admissible. Third, the original or copies of the summarized writings must be made available to the opposing party. And fourth, the proposed summary (or chart calculation) must accurately summarize (or reflect) the underlying document(s) and only the underlying documents(s).

61 Fed.Cl. at 546.

In the instant case, PR has not met these authentication requirements. Mr. Heath testified that he had no back-up documents that support Exhibit Four, other than those attached to the Exhibit.[5] Plaintiff has not

tendered the documents underlying the claim and has not established that they are too voluminous to be examined in court. Nor has the Plaintiff established what the evidence underlying the claim is or whether it is admissible. Plaintiff has not demonstrated that an original or copies of the summarized writings were made available to Defendant. In *Conoco Inc. v. DOE*, 99 F.3d 387, 393 (Fed.Cir.1996), the Federal Circuit recognized that Rule 1006 permits the introduction of summaries of documents, but only if the records from which the summaries were prepared are admissible and are made available to the opposing party for examination or copying. *See Jade Trading, LLC v. United States*, 67 Fed.Cl. 608 (2005) (excluding summaries where voluminous underlying documents were not provided to Plaintiff sufficiently in advance of trial). Finally, there has been no showing that the proffered summary accurately reflects any underlying documents. As such, Plaintiff has not established that the claim is admissible as a summary.

### *Exhibits 8 & 9, Memoranda Recommending Settlement, Prepared by Mr. Elguezabel*

Exhibits 8 and 9 are memoranda prepared by Domingo Elguezabel, a former COE employee, recommending settlement. Exhibit 8, entitled "Claim by PR Contractors" is dated October 5, 2001, and Exhibit 9 bearing the same title, is dated February 25, 2000. DA 59–66. Exhibit 8 purports to relate the background of the project and recount Mr. Patin's losses due to enumerated actions by the Government, as well as the underrun in embankment quantities. DA at 59. The memorandum also states that investigations into PR's allegations were made and that the author recommended that in the best interest of the Government "an attempt to arrive at a settlement with the contractor be made." DA 60. Exhibit 9 appears to be an earlier iteration of this memo containing the same

---

5. Mr. Heath testified:

Q: [Are] there[] any pieces of paper anywhere that might support these calculations[?]

A: I do not have any, any as in none, I do not have any documents that act as work papers, supporting information, et cetera, that deal

with the statement of claim or whatever else that I sent to NAICO. I do not have anything. However, I could not have done it without the information.

Deposition of Lin B. Heath (Apr. 12, 2005) at 70, DA 85 (Heath Dep.).

entries and also recommends that settlement be attempted and that a settlement proposal be made. DA 63–66.

Mr. Elguezabel was employed as an engineer with COE in the New Orleans district from 1970 until he retired in February 2003. Deposition of Domingo J. Elguezabel (Oct. 6, 2004) at 7–8, DA 116 (Elguezabel Dep.). In December 1996, he became the area engineer for Lafayette, Louisiana where the Wax Lake Project was located. Elguezabel Dep. at 9–11, DA 116. Mr. Elguezabel drafted the memoranda at issue after the Wax Lake Project had been concluded. At the time he drafted the memoranda, Mr. Elguezabel held the position of Administrative Contracting Officer. Elguezabel Dep. at 154, DA 127.

Defendant seeks to exclude these memoranda, arguing they are "replete with hearsay, argumentative, not based upon first-hand knowledge and not prepared within the scope of Mr. Elguezabel's employment with COE." Def.'s Mot. at 6. Defendant points out that during his deposition, Mr. Elguezabel could not explain how he reached some of his calculations and testified as to matters about which he had no first-hand knowledge. For example, the Government cites Mr. Elguezabel's conclusion that Plaintiff's owner was "brow-beaten to accept lower unit prices in order to get a price lower than the Government estimate," while Mr. Elguezabel did not attend the negotiations. Ex. 8 at 3, DA 61. Questions of foundation, competency, relevancy and potential prejudice may be better resolved at trial. *Knowles Elecs., LLC v. Microtronic U.S., Inc.*, 2000 WL 310305, 2000 U.S. Dist. LEXIS 5754 (N.D.Ill.2000); *see also Van Putten*, 2005 WL 612723, 2005 U.S. Dist. LEXIS 4009.

Defendant further argues that Exhibits 8 and 9 should be excluded because they do not fall within the business records exception to the hearsay rule. Defendant asserts that Mr. Elguezabel did not possess the authority to prepare the memoranda and that they were not kept in the course of regularly conducted business activity.

Plaintiff argues that because Mr. Elguezabal was employed by Defendant at the time he drafted the documents, the documents qualify as admissions of a party opponent under FED. R. EVID. 801(d)(2)(D). Pl.'s Resp. at 4. Defendant maintains Mr. Elguezabal did not have the appropriate authority to bind the government because Mr. Elguezabal's supervisors did not direct him to draft the memoranda and Mr. Elguezabal did not have the authority to modify the contract beyond $100,000. Def.'s Reply at 4.

FED. R. EVID. 801(d)(2)(D) provides:

A statement is not hearsay if . . . the statement is offered against a party and is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

FED. R. EVID. 801(d)(2)(D). As the Court in *Yankee Atomic Electric Co. v. United States*, 2004 WL 2450874, at *9 (Fed.Cl. Sept.17, 2004) (citation omitted) recognized, "Rule 801(d)(2)(D) declares statements of an agent or servant concerning a matter within the scope of his agency or employment to be defined not as hearsay if made during the existence of the relationship." Accordingly, once proper foundation for the statements is laid, "the statements are admissible if the declarant made them in his capacity as a government official on matters within the scope of his employment." *See Globe Savings Bank v. United States*, 61 Fed.Cl. 91, 96 (2004); *see also Clark v. United States*, 8 Cl.Ct. 649, 651 n. 1 (1985) ("[S]tatements of United States government officials concerning a matter within the scope of their employment are not hearsay.").

To establish that Exhibits 8 and 9 are admissions of a party opponent, PR must demonstrate that Mr. Elguezabal drafted Exhibits 8 and 9 in his capacity as a government official and that they discuss matters within the scope of his employment. However, as the Court in *Glendale Federal Bank, FSB v. United States*, 39 Fed.Cl. 422 (1997) explained, a declarant whose statement falls within Rule 801(d)(2)(D) "need not establish that his statement was 'authorized' within the meaning of the rule [because] . . . an agent may make vicarious admissions for his principal whether or not he is specifically authorized to speak on that subject." The founda-

tional elements for the requisite showing are best made at trial.

### Conclusion

Defendant's motion *in limine* is **DENIED** without prejudice to the objections therein being raised at trial.