Barbara R. JONASSON, Jeanne Norgren, Patricia Twohill, et al., Plaintiffs–Appellees,

v.

LUTHERAN CHILD AND FAMILY SERVICES, doing business as Lutherbrook Children's Center School, Defendant–Appellant.

No. 96–2707.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1997.

Decided May 22, 1997.

Andrew W. Levenfeld (argued), Levenfeld & Associates, Chicago, IL, for Plaintiffs-Appellees.

R. Clay Bennett, Robert E. Arroyo, Keck, Mahin & Cate, Chicago, IL, Robert L. Martier (argued), Chicago, IL, for Defendant-Appellant.

Before BAUER, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

The nine plaintiffs in this case brought suit against their employer, Lutheran Child and Family Services ("LCFS"), alleging that LCFS did not take timely or sufficient action in response to sexual harassment by the principal of a school that is a component of LCFS. The allegations were submitted to a

jury. That jury found for the plaintiffs on the issue of liability and awarded each compensatory and punitive damages. The issues of liability and compensatory damages are not before us on this appeal. LCFS appeals the jury's determination of punitive damages. For the reasons set forth in this opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

The nine plaintiffs were all employed by LCFS, a highly specialized residential care and educational facility for physically and emotionally disturbed children. Louis Kingsboro was the principal of Lutherbrook School, a school within LCFS. The plaintiffs all worked at the school, although in different capacities. The record contains evidence of a significant number of sexual harassment incidents on the part of Kingsboro. Many of these events occurred before the effective date of the Civil Rights Act of 1991 which allowed juries to award plaintiffs compensatory and punitive damages for such behavior. There were, however, incidents after that date as well.

On March 9, 1993, the assistant director of personnel, Annette Rops, informed her superior that Kingsboro was sexually harassing her daughter, who also was employed by LCFS. Between that date and May 14, 1993, LCFS conducted an eighty person-hour investigation and found that there was a significant basis to Ms. Rops' and others' harassment complaints. LCFS suspended Kingsboro for five days without pay, ordered him to submit to a psychological assessment and placed him on three months' probation. It also invited an outside consultant to conduct several days of seminars on sexual harassment.

Even after this corrective action, there were several instances of inappropriate behavior involving Kingsboro. In this same year, Kingsboro was given a satisfactory performance evaluation and a raise.

## II

## DISCUSSION

### A.

We agree with the district court that each award of punitive damages was not against the weight of the evidence. The district court was well aware that only instances after November 21, 1991 could serve as the basis for either compensatory or punitive damages,[1] and the jury was so instructed. The record contains sufficient evidence to sustain the jury's conclusion that LCFS knew (or had reason to know) of the sexual harassment long before it took corrective action against Kingsboro. *See McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir.1996) (noting that employer liability can attach if employer knew or had reason to know of harassment); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994) (same). The record also contains sufficient evidence to permit the jury to have concluded that LCFS failed to respond in an adequate manner to the evidence of a long history of sexual harassment by the principal. *See Doe*, 42 F.3d at 446 (stating that failure adequately to respond can support employer liability). The jury was entitled to conclude from the evidence presented that LCFS showed a lack of remorse and that such conduct was likely to happen again. Such an "intentional disregard for the statutory rights of its female employees" justifies the award of punitive damages. *Emmel v. Coca–Cola Bottling Co.*, 95 F.3d 627, 637 (7th Cir.1996).

### 1.

■ The jury was entitled to conclude that the incidents for which damages could be awarded were the product of a long-term, ostrich-like failure on the part of LCFS to deal forthrightly with Kingsboro's treatment of female employees. The evidence that LCFS knew or should have known that, after 1991, its female employees were in jeopardy was well established in the record. Svebakken, LCFS' executive director, received a memorandum from Browning, the

---

1. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

food service supervisor, in 1986. In that memo, she expressed her concern over LCFS' decision to promote Kingsboro to principal, notwithstanding the incidents of sexual harassment involving Kingsboro and three young women. The memo also noted that these incidents had been reported to the then-principal of the school and to Hass, now LCFS' Northern Illinois director. In addition, one of the plaintiffs, Ms. Tarnoski-Asberry, testified that she had told Nafzger of her sexual harassment problems with Kingsboro in 1989. Moreover, Zaino, a supervisory employee, testified that he too informed Nafzger, the Lutherbrook Director, of Kingsboro's sexual harassment of some of the employees in 1991. Hass testified that he was made aware of the incidents of sexual harassment involving Kingsboro, one involving a high school girl and several others involving the kitchen staff, as early as 1986. He stated that, when he was the director of the school, he had concerns about Kingsboro's sexual harassment. He noted, however, that neither he nor the acting principal, who was also aware of the harassment, put anything in Kingsboro's personnel file regarding the harassment. Finally, the plaintiffs' expert witness, Dr. Brubaker, testified that, given the pervasiveness of Kingsboro's conduct, it was highly unlikely that upper management did not know of the harassment.

### 2.

There was also evidence that LCFS was lenient in its treatment of Kingsboro in order to protect itself from a race discrimination suit by Kingsboro. LCFS expressed its concern not to move too quickly or harshly against Kingsboro for fear that he might bring a discrimination suit. Svebakken testified that Kingsboro's race played a role in LCFS' decision to promote Kingsboro to the position of principal. Svebakken further testified that management made an extra effort to retain Kingsboro as principal because he is African-American. Finally, Svebakken stated that when LCFS wanted to discharge Kingsboro, it needed to move slowly against him for fear that he would file a discrimination suit. Kingsboro, according to Svebakken, had filed (and withdrawn) a charge with

the EEOC over the suspension and probation. Even after returning to work, he continued to make threats of filing charges of racial discrimination. The jury could have believed that, had Kingsboro been white, LCFS would have reacted with more vigor to the complaints made against him.

The jury also was entitled to conclude that LCFS not only looked the other way for many years but that its corrective action was woefully inadequate, as demonstrated by Kingsboro's later conduct. On one occasion while on probation, he stood in the doorway to the copyroom when Ms. Jonasson was in the room and initially refused to move. She was forced either to rub against him to leave or to wait for him to move, which he did after being asked several times. In another instance, he held the door open for her to walk through; she chose to walk all the way around the building to avoid him. In addition, Burmeister, the food service supervisor, testified in a deposition that was read to the jury that Kingsboro's harassment of the food service employees, which included trying to hold the hands of the food servers, continued unabated even after May of 1993.

### 3.

 Renewing the argument that had been presented to the district court in a motion in limine, counsel for LCFS expressed at oral argument the fear that the jury considered the evidence of Kingsboro's misbehavior before November of 1991 in determining damages. We cannot say that the district court abused its discretion in admitting evidence of pre-1991 incidents; such evidence was admissible because it was relevant in the jury's determination of whether the steps LCFS took in response to the reports of harassment were reasonable. We note, moreover, that the jury was specifically instructed that it ought not consider evidence of incidents that occurred before November 21, 1991, in assessing damages. We must presume that the jury obeyed the instructions of the court and did not follow a course forbidden to them. See Shannon v. United States, 512 U.S. 573, 585, 114 S.Ct. 2419, 2427, 129 L.Ed.2d 459 (1994); Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472

U.S. 585, 604, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985).

### B.

■ LCFS also submits that several of the evidentiary rulings of the district court, in ruling on a motion in limine, were erroneous and constitute reversible error with respect to the judgment. We shall discuss each briefly. We must remember, of course, that such evidentiary rulings of the trial court are reviewed only for an abuse of discretion. *Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir.1996); *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1482 (7th Cir.1990).

Before we turn to each of the specific submissions of LCFS, we pause to point out that the motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings. It performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissable for any purpose. The prudent use of the in limine motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury. Some evidentiary submissions, however, cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment. In these instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury. Here the district court demonstrated a keen understanding of the proper role and limits of the motion in limine. It ruled on those matters that could be determined as threshold issues and deferred ruling on those matters on which it believed that the interest of both parties would be better served by deferring the ruling until the issue could be determined in a more concrete setting.

### 1.

■ LCFS submits that the district court erred by admitting testimony of management's responses to day-to-day issues and concerns.[2] In its view, such evidence was irrelevant and prejudicial. The day-to-day operational decisions were relevant, according to the court, to shed light on why the plaintiffs did not feel comfortable in utilizing the established procedure for reporting harassment.

We cannot say that the district court abused its discretion in admitting this evidence. Indeed, we believe that the court demonstrated a measured approach. It denied the motion in limine and held that such evidence might be helpful to the jury in determining the issues submitted to it. It cautioned the parties, however, that any such submission must be probative of the issues at trial and conform completely to the Rules of Evidence. In ruling on the motion in limine, the district court stated, " 'The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine.*' " R. 75 at 2 (quoting *Hawthorne Partners v. AT&T Techs., Inc.,* 831 F.Supp. 1398, 1400–01 (N.D.Ill.1993)). As counsel admitted at oral argument, despite this invitation by the trial judge to make specific objections to specific evidentiary submissions, none was in fact made.

### 2.

■ LCFS also submits that it was reversible error for the district court to allow the jury to consider evidence of two dates between Ms. Jonasson and Kingsboro in 1988. In its view, the evidence was irrelevant and inflammatory. We cannot say that the district court abused its discretion in denying the motion in limine with respect to this evidence. The court believed that the evidence was relevant and ought to be before

---

**2.** The district court admitted evidence of employees' complaints with kitchen ventilation, rodents in the kitchen, and the tidiness of the dining room. The judge also allowed in evidence regarding a meeting between Svebakken and the employees. In that meeting, Svebakken in-

formed the employees that, if they could not live by the systems he and Nafzger had in place, they could leave. In addition, the court allowed in evidence concerning LCFS' response to a dispute between Kingsboro and Ms. Jonasson arising over Black History month.

the jury because it had the task of evaluating the overall relationship of Ms. Jonasson and Kingsboro. Evidence that is relevant to the background of the case is admissible for that purpose. At the very least, it was not an abuse of discretion for the district court not to exclude this evidence in a motion in limine; the evidence was at least potentially relevant for the purpose the judge identified. *See Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344 (7th Cir.1995) (holding that conduct prior to passage of the Civil Rights Act of 1991 is admissible to provide context and background). LCFS did not object during the trial when Ms. Jonasson was testifying to these events. There is no reason to believe that the jury did not follow the court's instruction, which was agreed to by LCFS, not to consider events prior to November 1991 in determining either compensatory or punitive damages.

### C.

■ Because the total maximum award that may be made to any of these plaintiffs is, by statutory command, $200,000,[3] the district court reduced the award of $200,000 compensatory damages to Ms. Jonasson to $100,000 but left undisturbed the award of $100,000 in punitive damages. LCFS submits that the district court erred in reducing the amount of the compensatory damages while leaving intact the punitive award. Compensation is, it urges, the primary purpose of the Act, and therefore any reductions to abide by the mandatory cap should first come from punitive damages. We cannot say that the district court committed reversible error in making the adjustment that it made.

The statute contains no command as to how a district court is to conform a jury award to the statutory cap. Moreover, in this case, the court carefully detailed its reasons for taking the course that it did. Noting "its great respect for jury decisions," the court took action to preserve the jury's determination that the judgment of the court ought to reflect the award of both punitive and compensatory damages. Applying the "guideposts" set forth by the Supreme Court in *BMW of N. Am. v. Gore,* — U.S. —, —— ——, 116 S.Ct. 1589, 1598–99, 134 L.Ed.2d 809 (1996), the Court carefully rehearsed the evidence of record and concluded that the jury's determination that punitive damages be awarded was clearly warranted. We cannot say that, under the circumstances presented here, the district court erred in taking care that the judgment it entered reflected, as closely as permitted by the statute, the finding of the jury.[4]

### Conclusion

Upon study of the submissions of counsel and careful examination of the record, we believe that the district court committed no reversible error in the conduct of the trial and related proceedings in the district court. Accordingly, the judgment of the district court must be affirmed.

AFFIRMED.

---

3. Under 42 U.S.C. § 1981a(b)(3)(c), the sum of compensatory and punitive damages that may be awarded shall not exceed $200,000 if the employer, like LCFS, has more than 200 employees, but fewer than 501 employees.

4. In *Hogan v. Bangor & Aroostook R.R.,* 61 F.3d 1034, 1037 (1st Cir.1995), the jury awarded the plaintiff $200,000 each in compensatory and punitive damages. The statutory cap provided that the two together could not exceed $200,000. The district court reduced pro rata the compensatory and punitive damage awards to $100,000 each. The court of appeals modified the district court's judgment; it reinstated the full $200,000 compensatory award and vacated the punitive damages award. The court's opinion offers no extensive discussion of its reason for such a course, but a reading of the authority which it cites makes most probable that it took such a course in order to avoid the issues involving punitive damages. *Cf. Williams v. Pharmacia Opthalmics, Inc.,* 926 F.Supp. 791, 794 (N.D.Ind. 1996) (also reading *Hogan* as based on a desire to avoid the punitive damages issue).