**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JEANETTE NELSON,

    Plaintiff-Appellee,

    v.

REHABILITATION ENTERPRISES
OF NORTH EASTERN WYOMING;
TERRY O'GORMAN,

    Defendants-Appellants.

No. 96-8102

---

JEANETTE NELSON,

    Plaintiff-Appellant,

    v.

REHABILITATION ENTERPRISES
OF NORTH EASTERN WYOMING;
TERRY O'GORMAN,

    Defendants-Appellees.

No. 96-8105
(D.C. No. 95-CV-38)
(D. Wyo.)

---

ORDER AND JUDGMENT[*]

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before BALDOCK, BRORBY, and BRISCOE, Circuit Judges.

Defendant Rehabilitation Enterprises of North Eastern Wyoming (RENEW) appeals from a jury verdict and subsequent adjusted judgment in favor of plaintiff Jeanette Nelson, a former RENEW employee, on her claims under Title VII for retaliatory discharge and hostile work environment sexual harassment. Nelson cross-appeals the district court's reduction of the jury's damage award in accordance with the damages cap of 42 U.S.C. § 1981a(b)(3). We modify the judgment in part and affirm as modified.

I.

RENEW is a private nonprofit corporation which provides services to the disabled. RENEW hired Nelson in December 1992 as a part-time case manager in its rehabilitation department. As part of her duties, Nelson worked on a grant project with Terry O'Gorman, a supervisor and unit director in RENEW's production department. According to Nelson, O'Gorman made unwelcome sexual advances and remarks toward her during the course of their working relationship. Nelson reported the harassment to Elbert Belish, her immediate supervisor, who eventually reported the harassment to upper management. Based upon the reports, Larry Samson, who was president of RENEW, met with O'Gorman, Belish, and Nelson on separate occasions to discuss the accusations. No disciplinary action

was taken against O'Gorman and no further sexual harassment was committed by O'Gorman following these meetings.

In separate but related events, Nelson developed a friendship with Kyle Dittmer, a temporary production worker hired by O'Gorman. Nelson provided rides to Dittmer to and from work and to and from counseling sessions and the two shared personal problems. In addition, Nelson at times engaged in sexual banter with Dittmer. Although Belish allegedly believed Nelson was providing case management services to Dittmer, Nelson did not view her relationship with Dittmer as part of her position at RENEW. Dittmer eventually ended the relationship and informed O'Gorman that Nelson had been sexually harassing him. O'Gorman reported Dittmer's complaint to upper management and Jim Stewart, the human resources manager, was assigned to investigate. Samson met with Nelson after Stewart had completed his investigation and decided to discharge Nelson.

Nelson filed this action against RENEW and O'Gorman. The jury awarded Nelson $90,000 on her sexual harassment claim and $100,000 on her retaliatory discharge claim. The jury rejected Nelson's claim against O'Gorman for intentional infliction of emotional distress. After apportioning the jury's retaliatory discharge award into back pay and other components, and after applying the damages cap set forth in 42 U.S.C. § 1981a(b)(3)(B), the district

court entered judgment in favor of Nelson in the amount of $139,000.00. In a separate order, the court also awarded attorney fees and costs to Nelson as a "prevailing party" under 42 U.S.C. § 2000e-5(k).

II.

A. **RENEW's Appeal**

1. *Sufficiency of evidence to support verdict on retaliatory discharge claim*

RENEW argues the district court erred in denying its motion for judgment as a matter of law on Nelson's retaliatory discharge claim. Although RENEW does not challenge Nelson's ability to establish a prima facie case of retaliation, it contends Nelson presented insufficient evidence of pretext to rebut RENEW's proffered nonretaliatory reason for dismissing her and, accordingly, the evidence was insufficient to support the jury's verdict in favor of Nelson.

We review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court. Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1450 (10th Cir. 1997); Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1363 (10th Cir. 1994). "Under this standard, judgment as a matter of law is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Mason, 115 F.3d at 1450. In conducting our review, "we can neither assess the credibility of witnesses nor substitute our judgment for that

of the jury." Considine, 43 F.3d at 1363. "Instead, we must view the evidence most favorably to [] the party against whom the Rule 50 motion was made, and give [that party] the benefit of all reasonable inferences from the evidence." Id.

Although it is a close question whether Nelson provided a basis for the jury to disbelieve RENEW's proffered reasons for discharge, we ultimately conclude she did. It was uncontroverted that when Samson met with Nelson to discuss Dittmer's accusations, he was armed with a memorandum from Stewart listing allegations culled from a tape recording of a conversation between Nelson and Dittmer. Stewart stated in the memorandum to Samson that "the fact that you present this type of detail may deter her from further action." Append. II at 74. Although RENEW's witnesses explained this ambiguous statement alluded to deterring further sexual harassment by Nelson, we believe it possible that the jury could interpret the statement as referring to Nelson's complaints against O'Gorman and any potential legal action she may have contemplated filing as a result of those complaints. The jury could also arguably have inferred retaliation from the fact that Nelson and O'Gorman, though similarly situated as accused sexual harassers, were treated differently by RENEW. See Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (differential treatment leading to discharge of only one of similarly situated employees may establish improper motive). Finally, the record contains ample evidence that, contrary to the

testimony of RENEW's witnesses, Dittmer was only an employee of RENEW and not Nelson's client.  In light of this evidence, the jury could have concluded RENEW was attempting to redefine a personal non-working relationship between Nelson and Dittmer as one involving workplace sexual harassment in order to discharge Nelson.  Such a conclusion is not implausible when one considers the key piece of evidence purportedly relied upon by RENEW in suspending and discharging Nelson, *i.e.*, a tape recorded conversation between Dittmer and Nelson which was admittedly made after hours and away from work.  These inferences, bolstered by the close temporal proximity of Nelson's discharge (December 21, 1993) to her complaint against O'Gorman (first described to Belish on November 11, 1993; Samson met with Nelson on December 3, 1993) arguably support a suspicion of mendacity.  For these reasons, we conclude the district court did not err in denying RENEW's motion for judgment as a matter of law with respect to Nelson's retaliatory discharge claim.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) (factfinder's disbelief of defendant's proffered reason for discharge, together with elements of the prima facie case, suffice to show intentional discrimination).

2. *Amount of back pay in jury's compensatory damage award on retaliatory discharge claim*

Although Nelson sought an award of back pay in connection with her retaliatory discharge claim and the jury was instructed on back pay, the verdict form did not ask for a specific determination of the amount of back pay damages. Instead, the verdict form asked the jury to make a general determination of damages Nelson had suffered in connection with her retaliatory discharge claim, which under the court's instructions could have included back pay, front pay, emotional pain and suffering, and loss of enjoyment of life. See Append. I at 120 (verdict form asks jury to determine "what amount of damages, if any, will adequately compensate Nelson for her retaliatory discharge claim"). In response to this question, the jury awarded Nelson $100,000 in damages. After trial, at the urging of Nelson and over RENEW's objection, the court concluded Nelson was entitled to two years of back pay at an annual salary of $19,500. Specifically, the court concluded "Nelson asked for backpay, and the jury was instructed on back pay," and "Nelson's evidence supports a jury finding that Nelson is entitled to two years of back pay at an annual salary of $19,500." Append. I at 149. Accordingly, the court found "the jury awarded Nelson a total of $39,000 in back pay." Id. Although the court's finding is not entirely clear, we presume it intended to provide that the $100,000 damage award on Nelson's retaliatory discharge claim included an intended award of $39,000 for back pay.

-7-

On appeal, RENEW challenges the district court's decision to award $39,000 in back pay after concluding the jury had made such an award. In particular, RENEW argues the court could not properly enter judgment on a back pay award because there is no way to determine whether the jury awarded any back pay damages.

Because the district court's apportionment of the damage award occurred in the context of applying the 42 U.S.C. § 1981a(b)(3) damages cap, we construe RENEW's argument as a challenge to the court's application of the damages cap. Although we have found no cases indicating what standard of review to apply in such a case, see Jonasson v. Lutheran Child and Family Services, 115 F.3d 436, 441 (7th Cir. 1997) (affirming application of damages cap without stating applicable standard of review), we find it unnecessary to decide the controlling standard of review. Under any conceivable standard of review, it is clear the court erred in finding the jury's $100,000 damage award included $39,000 for back pay. At trial, the jury was instructed it could award damages for back pay (as well as other types of damages), but it was also instructed that Nelson had a duty to mitigate her damages. In light of these instructions, and in light of the conflicting evidence concerning whether Nelson was capable of working after her termination and whether she made reasonable attempts to find work after her termination, the jury could have reached a variety of conclusions with respect to

the issue of back pay (e.g., Nelson was entitled to full back pay for the twenty-nine months between her termination and trial; partial back pay; no back pay). As the court realized after trial, the verdict form should have asked the jury to separate the damage components to allow easy and effective application of the damages cap. Because the court did not do so and neither party objected to the verdict form, see Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1468 (10th Cir. 1992) (party may not take advantage of ambiguities created by jury instructions or verdict form if party did not point out ambiguities to court prior to submission to jury), we conclude the court should have treated the entire award as compensatory damages subject to the damages cap. It would arguably have been appropriate for the court to apportion the general award only if the evidence concerning Nelson's entitlement to back pay, as well as the amount of the back pay, had been uncontroverted.[1] Accordingly, we exercise our authority under 28 U.S.C. § 2106 to modify the judgment to allow only $100,000 in total damages.[2] See Wilmer v.

---

[1] We do not conclusively decide whether such action on the part of a district court would be appropriate. We do emphasize, however, that this situation can be avoided entirely by use of a verdict form that asks the jury to make separate findings with respect to each damage component.

[2] Because of our affirmance of the jury's verdict in Nelson's favor on her Title VII retaliatory discharge claim, combined with the fact that the jury's award of compensatory damages on the retaliatory discharge claim is the maximum amount Nelson can recover for all of her Title VII claims, it is unnecessary to reach the issues raised by RENEW concerning Nelson's sexual harassment claim. Specifically, even if we were to resolve these issues in RENEW's favor, it would not affect the compensatory damage award,

(continued...)

Board of County Com'rs of Leavenworth County, 69 F.3d 406, 410 (10th Cir. 1995) (exercising inherent appellate authority under § 2106 to modify judgment directly in order to obviate purely ministerial remand).

## B. **Nelson's Cross-Appeal**

1. *Application of damages cap to aggregate award of all claims*

In her cross-appeal, Nelson contends the district court erred in applying the damages cap. Specifically, Nelson argues the court erroneously applied the cap by aggregating her damages and limiting her to $100,000 for all of her Title VII claims. According to Nelson, the cap should be applied separately to each Title VII claim and she should be entitled to the full award of $190,000.

We reject Nelson's argument. "[W]hen a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992). Here, the clear and unambiguous language of § 1981a(b)(3) indicates the cap applies "for each complaining party," not to each

---

[2](...continued)
which is limited to $100,000, and we could not provide any effectual relief. In addition, because Nelson remains a "prevailing party" under 42 U.S.C. § 2000e-5(k), we find it unnecessary to address RENEW's challenge to the court's award of attorney fees and costs, which is based only upon the argument that Nelson should not have prevailed on either claim and therefore no fees or costs should be awarded.

claim. Thus, the court properly applied the cap ($100,000 in this case due to the number of persons employed by RENEW) to the aggregate damages awarded on both of Nelson's Title VII claims.

III.

The judgment is MODIFIED in part and AFFIRMED AS MODIFIED. Nelson's motion to strike RENEW's docketing statement is DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge