**IN RE: DEPAKOTE:**

**D.W.K., Jr. and Parents Mary and Daniel Kaleta, Plaintiffs,**

v.

**Abbott Laboratories, Inc., Defendant.**

**Case No. 14–CV–847–NJR–SCW**

United States District Court,
S.D. Illinois.

Signed February 20, 2015

---

Blair R. Loocke, Heath A. Novosad, Nancy R. McEvily, Phillip L. Sampson, Jr., Ralph D. McBride, Bracewell & Giuliani LLP, Jay H. Henderson, Jay Henderson PLLC, Jeffrey D. Meyer, The Meyer Law Firm P.C., John T. Boundas, John E. Williams, Jr., Margot G. Trevino, Sejal K. Brahmbhatt, Brian Abramson, Williams Kherkher Hart Boundas, LLP, Kenneth T. Fibich, Fibich Hampton et al, LLP, Houston, TX, Christopher F. Cueto, Law Office of Christopher Cueto, Ltd., Belleville, IL, Janet G. Abaray, Burg, Simpson et al., Cincinnati, OH, Jennifer Salim, Bracewell & Giuliani, Dallas, TX, Joshua C. Ezrin, Audet & Partners LLP, San Francisco, CA, Allen N. Schwartz, Kralovec, Jambois & Schwartz, Chicago, IL, for Plaintiffs.

Dan H. Ball, Stefan Mallen, Bryan Cave, LLP, St. Louis, MO, Dino S. Sangiamo, James E. Gray, Venable LLP, Jason C. Rose, Jason Sayers, Kathleen Sullivan Hardway, Michael B. MacWilliams, Michaela F. Roberts, Paul F. Strain, Stephen E. Marshall, Thomasina E. Poirot, David S. Gray, Venable LLP, Baltimore, MD, James F. Hurst, Kathleen B. Barry, Winston & Strawn, L.L.P., Chicago, IL, Michael R. Klatt, Gordon & Rees LLP, Austin, TX, for Defendant.

### *MEMORANDUM AND ORDER*

ROSENSTENGEL, United States District Judge:

Pending before the Court are twenty-two motions *in limine* filed by Abbott and three motions *in limine* filed by Plaintiffs.[1] At the February 9 final pretrial conference, the parties advised the Court that the first five motions in *limine* filed by Abbott bear the most impact on trial preparations with respect to editing deposition transcripts and resolving objections to exhibits. Accordingly, the Court addresses the first five motions *in limine* in this Order and will rule on the remaining motions *in limine* as soon as practicable. The Court expects the parties to resolve objections to exhibits and deposition testimony to the extent the issues are addressed by the Court's *in limine* rulings. The Court will not rehash *in limine* rulings and will only consider specific objections to specific exhibits and testimony that are not covered by these rulings. Any such evidentiary questions that will arise during the first week of trial shall be identified and presented to the Court no later than noon on Friday, February 27, 2015. The Court expects them to be minimal.

As explained in previous orders of the Court, this litigation involves a mass tort action, currently consisting of eighty-five cases on the undersigned District Judge's docket, in which numerous plaintiffs allege

1. These motions are directed specifically to Plaintiffs D.W.K., Jr. and his parents, Mary and Daniel Kaleta. With the impending trial date of March 2, 2015, the Court rules only on the D.W.K. motions at this time.

that they sustained personal injuries from the use of Abbott's prescription drug Depakote.[2] This mass tort action was reassigned to the undersigned District Judge from the docket of Judge David Herndon on May 19, 2014 (*See* Doc. 288 in Lead Case 12–cv–52). On July 25, 2014, the Court selected the following three bellwether cases for trial: D.W.K., Jr. and parents Mary and Daniel Kaleta (12–cv–57); E.P. and C.P. and parents Roger and Mindy Pyszkowski (to be tried together) (12–cv–56); and J.F. and parent Michelle Leal (13–cv–34) (*See* Doc. 304 in Lead Case No. 12–cv–52). The Court explained that D.W.K., Jr. and parents Mary and Daniel Kaleta (12–cv–57) would be tried first. For case management and docket control purposes, the Court opened a new case number, 14–cv–847–NJR–SCW, for these three cases only (12–cv–57, 12–cv–56, 13–cv–34). The Court then set a dispositive motion and *Daubert* motion deadline of December 1, 2014 (*Id.*). As to D.W.K., Jr. and parents Mary and Daniel Kaleta (12–cv–0057), the Court set a Final Pretrial Conference for February 9, 2015, and a Jury Trial date of February 17, 2015, which has since been moved to March 2, 2015 (*See* Docs. 1 & 49 in Case No. 14–cv–847).

 A district court's authority to rule on motions *in limine* is derived from its inherent authority to control the course of trials. *See Luce v. United States*, 469 U.S. 38, 41, n. 6, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). "[A] motion *in limine* should be granted only if the evidence sought to be excluded is clearly inadmissible for any purpose." *Noble v. Sheahan*, 116 F.Supp.2d 966, 969 (N.D.Ill.2000). Motions *in limine* are intended "to avoid the delay and occasional prejudice caused by objections and offers of proof at trial." *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir.1999). Such motions permit the district court to eliminate evidence "that clearly ought not be presented to the jury," because it is inadmissible for any purpose. *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436, 440 (7th Cir.1997). "[T]he party moving to exclude evidence *in limine* has the burden of establishing that the evidence is not admissible for any purpose." *Euroholdings Capital & Inv. Corp. v. Harris Trust & Sav. Bank*, 602 F.Supp.2d 928, 934 (N.D.Ill. 2009).

 Motion *in limine* rulings "are made before the district court has had a chance to hear all of the evidence or see the trial develop." *Currie v. Cundiff*, No. 09–cv–866–MJR, 2012 WL 2254356, at *1 (S.D.Ill. June 15, 2012). As such, these rulings are preliminary and may be revisited based on the court's exposure to the evidence at trial. *Id.*; *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir.1989).

 Some evidentiary submissions cannot be evaluated accurately or sufficiently prior to trial. *Jonasson*, 115 F.3d at 440. "In these instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury." *Id.* Further, the denial of a motion *in limine* does not preclude a party from objecting to any evidence at trial or from requesting a limiting instruction. *Team Play, Inc. v. Boyer*, No. 03–C–7240, 2005 WL 3320746, at *1 (N.D.Ill.Dec. 5, 2005).

The motions have been thoroughly briefed (with detailed motions, lengthy re-

2. "Depakote" refers to Abbott's group of prescription drugs with the basic active ingredient valproic acid. Depakote is also sometimes referred to by the chemical names "valproic acid," "valproate," or "divalproex sodium." Depakote is an anti-epilepsy drug ("AED") that has been marketed by Abbott in the United States in some form since 1978.

sponses, and contentious reply briefs),[3] and the Court heard from the parties concerning particular questions on certain motions at the February 9 final pretrial conference. For the reasons set forth below, the Court rules as follows:

1. Abbott's Motion *in. limine* No. 1— To exclude evidence, testimony and argument about preempted labeling issues (Docs.162, 164).

## GRANTED.

This motion *in limine* seeks to exclude evidence, testimony, or argument by Plaintiffs (1) suggesting that Abbott should have changed the FDA-approved warnings for Depakote in order to warn that prenatal Depakote exposure could contribute to developmental delay or (2) that Abbott should have changed the FDA-mandated Black Box Warnings accompanying the label.

Abbott asked the Food and Drug Administration ("FDA") for permission to add developmental delay warnings to the Depakote label in April 2005. The FDA denied the request in February 2006. A neurology research scientist, Dr. Kimford Meador, presented interim data from a study at the American Epilepsy Society annual meeting in December 2004. Abbott renewed its request in May 2007; the FDA denied it in February 2008. Abbott tried again in April 2009 (based on another interim study by Dr. Meador), but the warnings concerning developmental delay were not added to the label until 2011. Abbott argues that this evidence demonstrates that the developmental delay failure to warn claim is preempted because the FDA's rejections prove that it would have been impossible for Abbott to have implemented an FDA-approved developmental delay warning prior to Plaintiff D.W.K.'s *in utero* exposure to Depakote.

■ Conflict preemption occurs when a "state law is in actual conflict with federal law," which exists when "it is impossible for a private party to comply with both state and federal requirements ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 64, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002). The Supreme Court has indicated that, if there is "clear evidence that the FDA would not have approved a change" to the prescription drug's label, then it would be impossible to comply with both federal and state requirements and the state failure to warn claim would be preempted. *Wyeth v. Levine*, 555 U.S. 555, 571, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009) ("But absent clear evidence that the FDA would not have approved a change to Phenergan's label, we will not conclude that it was impossible for Wyeth to comply with both federal and state requirements."); *see also Dobbs v. Wyeth Pharm.*, 797 F.Supp.2d 1264, 1270 (W.D.Okla.2011) ("FDA labeling regulations do not preempt state law failure-to-warn claims unless the manufacturer presents 'clear evidence that the FDA would not have approved a change' to the drug's label, thereby making it 'impossible' for the manufacturer to comply with 'both federal and state requirements.' ").

3. The parties have filed reply briefs to each motion, in spite of the admonition in Local Rule 7.1 that "[r]eply briefs are not favored and should be filed only in exceptional circumstances. " SDIL–LR 7.1(g) (bold in original). Local Rule 7.1 further provides that "the party filing the reply brief shall state the exceptional circumstances." *Id.* The parties fail to specifically state the exceptional circumstances that warrant the filing of reply briefs for each of the twenty-five motions *in limine*. The Court has nonetheless considered each reply rather than engaging in lengthy oral argument on each motion.

In *Wyeth*, the Supreme Court does not define "clear evidence," so "application of the clear evidence standard is necessarily fact specific." *See In re Fosamax (Alendronate Sodium) Products Liability Litigation*, 951 F.Supp.2d 695, 703 (D.N.J. 2013) (citing *Dobbs*, 797 F.Supp.2d at 1270). The Seventh Circuit has explained that the "journey to deciphering the 'clear evidence' standard begins with understanding how drug manufacturers receive approval to market new prescription drugs and to change a label once it has been approved." *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 391 (7th Cir. 2010).

 Before marketing a new drug, the manufacturer must submit a New Drug Application to the FDA, which demonstrates by "substantial evidence" that the medication is efficacious. *Id.* (citing 21 U.S.C. 355(d)(5)). "The FDA's approval is then conditioned on the manufacturer's use of the label it suggests." *Id.* (citing 21 C.F.R. § 314.105(b)). "Even after the medication is approved, the FDA continues to have authority over it and its label." *Id.* (citing 21 C.F.R. 314.80–.81). "The manufacturer, however, has the ability to change the label without FDA approval through a 'changes being effected' (CBE) labeling change." *Id.* at 392. "The CBE regulation allows a manufacturer to modify a label to 'add or strengthen a contraindication, warning, precaution, or adverse reaction' . . . and to do so when it files its supplemental application, before the FDA has the opportunity to consider whether or not it will accept the change." *Id.* (citing 21 C.F.R. § 314.70(c)(6)(iii)(A), (C)).

 The Court finds that there is clear evidence that the FDA would not have approved a change to the 1999 label to include a warning of developmental delay. As stated above, Abbott tried, on various occasions, to secure approval of a develop-

mental delay warning, and its requests were twice denied by the FDA (*See* Docs. Doc. 162–4; Doc. 162–5; Doc. 162–7; Doc. 162–8). In light of the fact that the FDA rejected the developmental delay warning in 2006 because it did not find that the available scientific evidence at that time supported the addition of such a warning, it is highly unlikely that the available scientific evidence, *seven years prior* to that date in 1999, would have supported the addition of such a warning. Notably, the FDA did not actually approve this developmental delay language until 2011 (Doc. 162–14).

Plaintiffs assert, however, that the White Papers that Abbott submitted with the 2005 PAS (and 2007 RFA) deliberately omitted results of many studies that supported its proposed label change, thus, the FDA was misinformed. After a close review of the evidence demonstrating what was cited and submitted by Abbott to the FDA, the Court finds this argument unavailing. Plaintiffs also assert that it would not have been impossible for Abbott to have implemented a developmental delay warning because Abbott could have submitted a Changes Being Effected ("CBE"), instead of a Prior Approval Supplement request ("PAS") or a Request for Advice ("RFA"). A CBE allows a manufacturer to immediately add a warning unilaterally, which is then subsequently reviewed by the FDA. 21 C.F.R. § 314.70(c). Notably, the Seventh Circuit has explained:

> The ability to make CBE labeling changes underscores a central premise of federal drug regulation: A 'manufacturer bears responsibility for the content of its label at all times.' *Levine*, 129 S.Ct. at 1197–98. While it is important for a manufacturer to warn of potential side effects, it is equally important that it not overwarn because overwarning can deter potentially beneficial uses of

the drug by making it seem riskier than warranted and can dilute the effectiveness of valid warnings. Therefore, warnings may only be added when there is 'reasonable evidence of an association of a serious hazard with the drug.' 21 C.F.R. § 201.57(2003). It is technically a violation of federal law to propose a CBE that is not based on reasonable evidence. 18 U.S.C. § 1001.

*Mason,* 596 F.3d at 392.

The FDA still must ultimately approve the CBE change. 21 C.F.R. § 314.70; 71 Fed.Reg. 3922 (The FDA reviews all such CBE submissions and "may later deny approval of the supplement, and the labeling remains subject to enforcement action if the added information makes the labeling false or misleading under section 502(a) of the act (21 U.S.C. 352)"); *see also Mason,* 596 F.3d at 392. Further, the FDA applies the same standards to evaluate both PAS and CBE supplements. *See Fosamax,* 951 F.Supp.2d at 704 ("Like a PAS, the 'proposed change must be based on 'reasonable evidence of' an association between a hazard and the drug at issue; however, a causal relationship need not have been definitely established.' "); Doc. 162–33. Dr. Blume confirmed that "they both follow under the same categories of FDA review." (Doc. 162–32, p. 4).

Because the FDA rejected Abbott's 2005 PAS, it likely would have rejected an earlier submitted CBE seeking to add the same language to the label that it eventually rejected in the PAS. *See Fosamax,* 951 F.Supp.2d at 704 ("Thus, since the FDA rejected Defendant's PAS, it would not have approved a CBE seeking to add the same language to the label that it just rejected in the PAS...."). The FDA obviously found that there was not reasonable evidence of an association between Depakote and developmental delay in 2006, and thus it is unlikely that the FDA would have found reasonable evidence of an association between the two in 1999, seven years earlier. Thus, the Court finds that Abbott has satisfied its burden of demonstrating clear evidence that the FDA would not have approved a developmental delay warning in 1999. Under the specific facts of this case, the Court finds that preemption is warranted.

Further, the Court excludes this evidence based on Federal Rule of Evidence 403, because its probative value, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and waste of time. FED. R. EVID. 403 ("[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Providing jurors with the context necessary to make sense of the developmental delay warnings would necessitate a mini-trial on the label change Abbott tried to make later, about the evolution of developmental delay literature/data, Abbott's FDA submissions, whether these submissions were sufficient, and the FDA's decisions with regard to those submissions. Thus, any evidence or testimony that Abbott should have implemented a developmental delay warning prior to D.W.K.'s *in utero* exposure to Depakote is not admissible at trial.

Abbott also urges the Court to prohibit Plaintiffs from asserting that Abbott should have changed or employed the CBE process to amend the Black Box Warning on the 1999 Depakote label. In 1999, the FDA required that certain drugs with:

> [s]pecial problems, particularly those that may lead to death or serious injury, may be required by the Food and Drug Administration to be placed in a promi-

nently displayed box. The boxed warning ordinarily shall be based on clinical data, but serious animal toxicity may also be the basis of a boxed warning in the absence of clinical data. If a boxed warning is required, its location will be specified by the Food and Drug Administration. The frequency of these serious adverse reactions and, if known, the approximate mortality and morbidity rates for patients sustaining the reaction, which are important to safe and effective use of the drug, shall be expressed as provided under the 'Adverse Reactions' section of the labeling.

21 C.F.R. § 201.57(e) (1999). The FDA regulations on Black Box warnings provide that: "to ensure the significance of boxed warnings in drug labeling, they are permitted in labeling only when specifically required by FDA." 44 Fed.Reg. 37, 434, 37, 448 (June 26, 1979). The regulations further provide that, "the labeler's desires about location and wording of boxed warnings, however, will be considered." *Id.*

The parties agree that Abbott could not have *unilaterally* changed the Black Box Warning (Doc. 213, p. 4). Moreover, Dr. Blume testified that Abbott could not have changed the Black Box Warning through a CBE[4] (Doc. 162–22, p. 7–8). Further, to the extent that Plaintiffs argue that they should be able to introduce evidence that Abbott failed to request a Black Box Warning from the FDA regarding developmental delay (Doc. 213, p. 21), Abbott has set forth clear evidence that such a request in 1999 would have been futile. For these reasons, Abbott's Motion *in limine* No. 1 is granted.

**2. Abbott's Motion *in limine* No. 2— To exclude evidence and argument about post-conception labeling and regulatory communications (Doc. 161).**

**GRANTED in part and RESERVED RULING in part.**

As it relates to Plaintiff D.W.K., this motion seeks to exclude "references to labeling and regulatory communications post-dating 1999 if offered to challenge the adequacy of the FDA-approved warnings accompanying the Depakote to which D.W.K.—born in 1999—was allegedly exposed or for any other purpose." (Doc. 161, p. 1).

The Court will first address Abbott's argument that the post–1999 labels should be excluded under Rule 407. Rule 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent remedial measures is not admissible to prove: negligence; culpable conduct; a defect in product or its design; or a need for warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

FED. R. EVID. 407. This rule rests on two grounds: (1) the fact that "the world gets wiser as it gets older" does not mean that "it was foolish before;" and (2) individuals should be encouraged to take steps in furtherance of added safety. FED. R. EVID. 407 advisory committee's note.

---

4. Dr. Blume notes in her deposition that "there are examples in the websites of companies who have changed a black box using a CBE," but that the only time this is appropriate is if "all the changes had already been agreed to between a company and the FDA and FDA gives them preorder permission to go to print with a CBE." (Doc. 162–22, p. 7–8).

■ There were three label changes subsequent to the 1999 label that Abbott seeks to exclude: a 2006 label, a 2011 label, and a 2013 label. Plaintiffs argue that none of these label changes was voluntary and thus they do not qualify as a subsequent remedial measure. Courts have held that Rule 407 does not apply to a remedial measure that was taken without the voluntary participation of the defendant. *See Millennium Partners, L.P. v. Colmar Storage, LLC,* 494 F.3d 1293, 1302 (11th Cir.2007); *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1204 (8th Cir.1990) (holding that "[a]n exception to Rule 407 is recognized for evidence of remedial action ... undertaken by a third party"); *In re Air-crash in Bali, Indonesia,* 871 F.2d 812, 816–817 (9th Cir.1989). Specifically, the Seventh Circuit has found that Rule 407 has no applicability "when the evidence is offered against a party ... which did not make the changes." *Lolie v. Ohio Brass Co.,* 502 F.2d 741, 744 (7th Cir.1974).

Plaintiffs argue that the 2006 label change was a hard-fought battle between the FDA and Abbott to include language that there was a "4–fold increase in congenital malformations among infants with valproic acid-exposed mothers." (Doc. 211, p. 4). As to the 2011 and 2013 label changes, Plaintiffs argue that Abbott did not "voluntarily adopt" these changes, but instead "adopted a regulatory strategy designed to circumvent any change." (Doc. 211, p. 11). Plaintiffs cite to the *Yaz* case in support of their argument that these subsequent label changes were not voluntary. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Products Liab. Litig.,* No. 3:09–CV–10012–DRH, 2011 WL 6740391 (S.D.Ill.Dec. 22, 2011).

In *Yaz,* Judge Herndon let in evidence of an alleged subsequent remedial measure that was taken after the defendant Bayer received a letter from the FDA's Division of Drug Marketing, Advertising, and Communications ("DDMAC") asking it to cease running advertisements and directing them to take corrective action. *In re: Yaz,* 2011 WL 6740391, at *8. The defendant moved to exclude evidence regarding its corrective action, asserting that it was voluntary and thus a subsequent remedial measure. *Id.* Judge Herndon rejected this argument, reasoning that this letter was "part and parcel to the enforcement mechanism of the FDA" and was "no more voluntary than a party paying a judgment without the judgment creditor pursuing post-judgment relief such as a garnishment." *Id.* Judge Herndon distinguished this from the scenario where a party, "of its own accord, seeks to eliminate a harmful situation, once it learns of its existence, in order to prevent further harm." *Id.*

Here, unlike in *Yaz,* the 2006 label change process was initiated by Abbott when Abbott proposed a label change in light of the results of a NAAED Pregnancy Registry that Abbott participated in by making monetary contributions. The 2011 and 2013 label changes were also initiated by Abbott. Thus, the conduct that led to the 2006, 2011, and 2013 label changes is simply not the type of involuntary action found in *Yaz.* As to Plaintiffs' argument that Abbott's actions were really just strategic in effort to avoid having to adequately warn of Depakote's risk (and that Abbott only participated in the NAAED Pregnancy Registry because it "did not want to be blindsided"), Abbott's motives are irrelevant to the Court's Rule 407 analysis. *See Chlopek v. Federal Ins. Co.,* 499 F.3d 692, 700 (7th Cir.2007) (finding that the company's "motive for making the change" to the warning label was irrelevant for Rule 407 purposes, even though there was evidence that the change was not made for safety reasons). Further, the communications between Abbott and

the FDA are an inherent and necessary aspect of label revisions and do not render a subsequent change involuntary for purposes of Rule 407. *See Werner v. Upjohn Co.*, 628 F.2d 848, 859 (4th Cir.1980).

Moreover, the Court questions the relevance of label changes that were made at least seven years later. Both the NAAED registry and study, which prompted these label changes, were not published until after D.W.K. was born. This data was subsequently used to compare Depakote to other AEDs, including some that were not even on the market in 1999. Since these labels are based on studies/data not available in 1999, they are not relevant to the adequacy of the 1999 label. Lastly, Plaintiffs' feasibility argument[5] fails because Abbott is not asserting that it was not feasible to change the label; Abbott's position is that the 1999 label is adequate. *See Werner*, 628 F.2d at 855 ("[The defendant] does not argue that it could not have written a stronger warning, it argues that the 1974 warning was adequate given the knowledge it had at that time. This defense simply does not raise an issue of feasibility.").

 In any event, the Court does not find that such evidence passes muster under Rule 403. The ultimate question for the jury is whether the 1999 label adequately warned of Depakote's risks. This is measured by the amount of knowledge that Abbott had at that time. *See Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194, 198 (1980) (the critical inquiry is "whether the manufacturer, because of the 'present state of human knowledge,' [citation omitted] knew or should have known of the danger presented by the use or consumption of a product."). If the jury was presented with the post–1996 labels, it could conclude the

1996 label was inadequate simply because the post–1996 labels say something more. Thus, the Court finds that the probative value of the subsequent labels is substantially outweighed by the danger of unfair prejudice. *See Giles v. Wyeth, Inc.*, 556 F.3d 596, 600 (7th Cir.2009) (affirming the district court's decision to exclude later warnings under Rule 403); *see also N. Trust Co. v. Upjohn Co.*, 213 Ill.App.3d 390, 157 Ill.Dec. 566, 572 N.E.2d 1030, 1038 (1991) ("[T]he salient question was whether Upjohn knew, prior to 1978, that cardiac arrest was associated with the use of the drug Prostin ... what Upjohn knew or included in its warnings after 1978 was irrelevant and only served to confuse and prejudice the jury against Upjohn."). Thus, the subsequent labels are not admissible at trial.

With regard to Abbott's request to exclude "regulatory communications" concerning these subsequent labels, the Court is not clear as to what exactly this evidence involves and for what purpose Plaintiffs will seek to admit it. This determination will have to be made on a case-by-case basis. Thus, the Court reserves ruling on whether evidence of regulatory communications is admissible at trial. *Jonasson*, 115 F.3d at 440 (the court may defer ruling on a motion *in limine* until trial if the parties' arguments "cannot be evaluated accurately or sufficiently ... in such a procedural environment.").

**3. Abbott's Motion *in limine* No. 3 (Doc. 147)—To exclude evidence and argument about foreign labeling.**

**DENIED.**

 This motion seeks to exclude the label for Epilim, the version of Depakote

---

**5.** Rule 407 provides that changes are admissible for purposes other than proving culpable

conduct, such as "feasibility of precautionary measures" if disputed.

sold in the United Kingdom and elsewhere in Europe. Abbott contends that foreign product labels and the regulatory actions are irrelevant to any issue in this case.

The Court disagrees. This evidence is relevant on the issue of Abbott's *knowledge* during a relevant time period (before D.W.K's conception) about the drug it introduced into the United States market. *See In re: Yaz,* 2011 WL 6740391, at *2 ("While the regulatory actions of European Medical regulators are not binding on the FDA—a fact that should be made clear to the finders of fact in this case to avoid confusion—the full body of knowledge including the foreign regulatory process that came to bear on the drugs at issue and which were well within the notice and knowledge of [the manufacturer] is admissible as part of the fabric of how these drugs came to the United States market and whether all the information which should have been utilized in doing so was utilized."); *see also Newman ex rel. Newman v. McNeil Consumer Healthcare,* No. 10 C 1541, 2013 WL 4460011, at *13 (N.D.Ill. Mar. 29, 2013) (Denying the defendants motion *in limine* because "[t]he probative value of ... foreign labeling, as it relates to Defendants' knowledge of the risks and willfulness in not sharing certain of those risks on its American OTC label, is not substantially outweighed by the time, potential for cumulative evidence, or risk of confusion to the jury."); *see also Robinson v. McNeil Consumer Healthcare,* No. 07–cv–5603 (N.D.Ill. Aug. 12, 2009) (denying motion to exclude evidence of or reference to foreign labeling and regulatory actions and finding that this evidence would be allowed at trial "for the limited purpose under Federal Rule of Evidence 105 of defendants' knowledge") (*See* Doc. 209–1, p. 2). The information contained in the Epilim label is clearly probative, and its value outweighs any prejudice to Abbott.

**4. Abbott's Motion *in limine* No. 4 (Doc. 156)—To limit references to scientific and medical data postdating the child plaintiffs' birth.**

**DENIED.**

As it relates to D.W.K., Abbott seeks to exclude "references to AED risk data postdating 1999 if offered to challenge the adequacy of the FDA-approved warnings accompanying the Depakote to which D.W.K.—born in 1999—was allegedly exposed or for any purpose other than to establish general causation, i.e., whether Depakote exposure can cause an injury for which damages are sought on D.W.K.'s behalf.

The Court finds that scientific and medical data issued after D.W.K. was born may be relevant and probative of the data that could have and should have been known before D.W.K. was conceived. This evidence is also relevant on the issue of causation, because it is undisputed that Depakote's formulation has not changed since it was first marketed in 1983. The Court finds the attempted distinction by Abbott's counsel at the February 9 hearing of "general" causation and "specific" causation illusory. Plaintiffs will be allowed to introduce medical and scientific evidence, with proper foundation, if that evidence can be linked to the causation issues in this case.

On February 16, 2015, Plaintiffs submitted to the Court a list of fifty post–1999 articles that they anticipate using at trial with witnesses and experts. If Plaintiffs have not done so already, they should disclose this list to Abbott. Any specific objections to those fifty articles should be brought to the Court's attention by **noon** on **Friday, February 27, 2015.**

5. **Abbott's motion *in limine* No. 5 (Docs.159, 160)—To exclude references to promotional activities, promotional materials, and sales and marketing practices.**

**DENIED in part and RESERVED RULING in part**

Abbott seeks to preclude Plaintiffs from presenting "argument, testimony, and evidence regarding Abbott's promotional activities, distribution of promotional materials, and sales and marketing practices related to Depakote." (Doc. 159, p. 1). Even without testimony that these materials affected the decisions of Mrs. Kaleta's physicians (and it is not entirely clear at this point that is the case), this evidence is relevant on the issue of what Abbott knew and when it knew about the scope of Depakote's birth defect risks and its proper use in women of childbearing years. This evidence may also be relevant to the content of the 1999 label if, as Plaintiffs suggest, they can show that Abbott's marketing strategy influenced its label. As Judge Herndon found in the Yaz cases, "evidence about sales goals is certainly relevant particularly when it may impact decision making regarding labeling." *In re: Yaz*, at *10; *see also In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 369 F.3d 293, 314 (3d Cir.2004) ("[E]xcessive concern with the image and marketing of the diet drugs at the expense of making efforts toward determining whether they were safe could be probative as to whether [the manufacturer] breached a duty of care towards the plaintiffs.").

To summarize, marketing materials issued before the birth of D.W.K. are certainly relevant; a decision about post–1999 marketing materials will have to be made on a case-by-case basis, but unless they contain pre–1999 facts, it is likely that they are not relevant. The probative value of marketing materials available before D.W.K.'s birth is not outweighed by the danger of unfair prejudice, confusion, or waste of time.

**IT IS SO ORDERED.**